# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| OWEN CARL BELL, et al., ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | NO. 3:18-cv-00501 |
| ) | CHIEF JUDGE CRENSHAW |
| JOHN C. MCLEMORE, et al., ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM OPINION

Debtors-Appellants Owen Carl Bell, Marla Bell, and the Owen Bell Family Limited Partnership ("Family Partnership") appeal the Order Granting Trustee's Motion For Summary Judgment, entered by the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court") in the Chapter 7 case, In re Owen Carl Bell, Case No. 16-02966-CW3-7. The appeal has been fully briefed. For the reasons set forth below, the order granting the Trustee summary judgment will be affirmed.

## I. Background and Procedural History

On April 26, 2016, Debtors-Appellants filed a voluntary petition under Chapter 7. (Doc. No. 9-6 at 70.) On Schedule A/B, Debtors-Appellants listed an ownership interest in real property located at 4099 Brick Church Pike, Whites Creek, Tennessee 37189 (the "Brick Church Property"). (Id. at 79.) They valued the Brick Church Property at $662,510, comprising the vast majority of the estate's assets. (Id. at 85.) In the course of the bankruptcy proceedings, John C. McLemore, the Chapter 7 Bankruptcy Trustee ("Trustee") filed a Complaint to Set Aside Fraudulent Conveyances, alleging that the Brick Church Property had been subject to fraudulent conveyances prior to the Chapter 7 filing. (Doc. No. 9-3 at 58.) The Trustee's complaint alleged

that Owen Bell purchased the Brick Church Property with his first wife, Anita Bell, in 1974, and, when the couple divorced in 1975, he obtained ownership in fee simple pursuant to the divorce decree. (Id. at 60.) In 1978, Owen Bell remarried to Marla Bell, and he conveyed his fee simple interest in the Brick Church Property to Marla Bell and their minor son Christopher Bell, as tenants in common. (Id.)

In 1982, Marla Bell attempted to convey her one-half undivided interest in the Brick Church Property to her sister, Betty Jo Mabry. (Id.) However, in 1984, Owen and Marla Bell filed a voluntary Chapter 7 bankruptcy petition, and the Bankruptcy Court set aside Marla Bell's conveyance of her one-half interest to Betty Jo Mabry as fraudulent. (Id. at 61.) As a result of the 1984 bankruptcy proceedings, Margaret Behm, the trustee at that time, became owner of Marla Bell's undivided one-half interest in the Brick Church Property, as tenant in common with Christopher Bell. (Id.) At the subsequent sale of Behm's interest, Owen Bell and Marla Bell's seven-year-old daughter—Angela Bell—purchased Trustee Behm's interest for $130,000. (Id.) At that point, Christopher Bell and Angela Bell, the children of Owen Bell and Marla Bell, each owned an undivided one-half interest in the Brick Church Property. (Id.)

The Trustee further alleged that in December 2000, Owen Bell, Marla Bell, Christopher Bell, and Angela Bell executed a Limited Partnership Agreement (the "LP Agreement") for the Family Partnership. (Id.) According to the LP Agreement, the Family Partnership had two general partners (Owen and Marla Bell), each owning a 1% general partnership interest, and four limited partners (Owen Bell (24%), Marla Bell (24%), Christopher Bell (25%), and Angela Bell (25%)). (Id.) Two years later, in 2002, Christopher Bell and Angela Bell each conveyed their one-half undivided interests in the Brick Church Property to the Family Partnership. (Id.)

In October 2010, N5ZX Aviation, Inc. filed a federal lawsuit against Owen Bell. (Id. at 62.) On February 15, 2013, four days before the initial trial date in the N5ZX litigation, (1) Owen Bell resigned as general partner of the Family Partnership; and (2) the Family Partnership conveyed its fee simple interest in the Brick Church Property by quitclaim deed to Owen and Marla Bell as husband and wife, purporting to create a tenancy by the entirety. (Id. at 63.) Subsequently, in March 2014, the jury awarded a $1,000,000 judgment to N5ZX Aviation. (Id. at 62.)

The Trustee identified Owen Bell's resignation as general partner of the Family Partnership, and the quitclaim of the Brick Church Property from the Family Partnership to Owen Bell and Marla Bell as tenants by the entirety, as the fraudulent and avoidable transfers. (Id. at 63.) The Trustee sought to avoid those transfers as fraudulent and recover the value of the Brick Church Property for preservation of the benefit of the estate. (Id. at 66-67.)

Debtors-Appellants filed an answer to the Trustee's complaint denying that the transfers were fraudulent, and the parties engaged in discovery. (See Doc. No 9-4 at 55-62.) Thereafter, the Trustee filed a motion for summary judgment, arguing that (1) the undisputed facts demonstrated that Debtor Owen Bell and the Family Partnership made the transfers at issue; and (2) those transfers were actually and constructively fraudulent. (Id. at 79-80.) Further, the Trustee requested to sell the property in accordance with 11 U.S.C. § 363(h). (Id.)

Debtors-Appellants filed a three-page response to the Trustee's motion for summary judgment, first arguing that the transfers were for legitimate estate planning purposes. (Doc. No. 9-8 at 9-10.) Moreover, as to the Trustee's request to sell the property, Debtors-Appellants contended that the Trustee had failed to establish his authority to sell the Brick Church Property free of Marla Bell's co-owner interest under § 363(h). (Id. at 10.) Debtors-Appellants' primary

3

argument was that the Trustee had not established that partition of the Brick Church Property was impracticable, as required by § 363(h)(1). (Id. at 10-11.) Further, they asserted that the Trustee had not demonstrated that the benefit to the estate of a sale of the Brick Church Property, free of Marla Bell's co-owner interest, outweighed the detriment to her, as required under § 363(h)(3). (Id. at 11.)

In his reply, the Trustee reiterated that the conveyances of the Brick Church Property were both actually and constructively fraudulent. (Id. at 12-19.) Further, the Trustee contended that Debtors-Appellants arguments regarding a sale of the Brick Church Property, pursuant to § 363(h), were barred by *res judicata*, as the Bankruptcy Court had previously confronted this exact issue in Owen and Marla Bell's 1984 Chapter 7 bankruptcy proceeding. (Id. at 20-22.) The Trustee noted that, in those proceedings, after Marla Bell's conveyance to Betty Jo Mabry was set aside as fraudulent, Trustee Margaret Behm filed a complaint for sale of the Brick Church Property under § 363(h). (Id. at 20.) Christopher Bell, who owned the other one-half undivided interest in the Brick Church Property as a tenant-in-common with the estate, objected to the § 363(h) sale. (Id.) The Bankruptcy Court found that the § 363(h) factors were met, and authorized the sale.[1] (Id. at 20-21.) Moreover, the Bankruptcy Court's decision was affirmed on appeal. See Behm v. Bell, 80 B.R. 104, 105 (M.D. Tenn. 1987). Therefore, the Trustee contended that the Debtors-Appellants' §363(h) argument concerning the Brick Church Property was barred by *res judicata*. (Doc. No. 9-8 at 20-21.)

---

[1] As noted above, ultimately, Trustee Behm proceeded with a sale only of the estate's undivided one-half interest in the property, rather than a §363(h) sale of the property free and clear of Christopher Bell's interest. (Doc. No. 9-3 at 60.) The record does not indicate why Trustee Behm did not conduct a § 363(h) sale. Regardless, for *res judicata* purposes, the issue was properly considered by the Bankruptcy Court and affirmed on appeal.

In the alternative, the Trustee maintained that the undisputed facts showed he possessed authority under § 363(h) to sell the Brick Church Property free and clear of Marla Bell's co-owner interest. (Id. at 22-23.) Specifically, he asserted that, pursuant to the § 363(h) factors: (1) there was no practicable manner of partition of the Brick Church Property other than a sale and division of the proceeds; (2) sale of the estate's undivided one-half interest in the property would realize substantially less than a sale of the entire property free of the co-owner's interest; (3) the estate would realize a substantial benefit from the sale; and (4) the Brick Church Property was used as a residence, and not in the production, transmission, or distribution for sale of electricity or gas. (Id. at 23.)

The Bankruptcy Court granted the Trustee's Motion for Summary Judgment, first determining that the transfers at issue were actually and constructively fraudulent. (Id. at 50.) The Bankruptcy Court then found that the Trustee had established that Debtors-Appellants' § 363(h) argument was barred by *res judicata*. (Id. at 53-54.) The Bankruptcy Court concluded that:

> There is no question that this very issue was litigated and decided by this Court, and affirmed by the district court, in Behm v. Bell; therefore, the first and third elements of *res judicata* are established. The Trustee in this case is in privity with Trustee Margaret Behm, and the Debtor and Marla Bell are in privity with Marla Bell and Christopher Bell. And finally, there is an identity of causes of action between the prior action and this case. For these reasons, the doctrine of *res judicata* applies to bar the Debtor and Marla Bell from re-litigating the issue of whether the Brick Church Property may be sold free and clear of the co-owner's interest.

(Id. at 54.) Alternatively, the Bankruptcy Court found that the Trustee had set forth undisputed facts to support every element of § 363(h) test, thereby justifying the sale. (Id. at 54.) The Bankruptcy Court noted that:

5

> There is no dispute that the Brick Church Property is a single-family residence. Where property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds. Mostoller v. Kelley (In re Kelley), 304 B.R. 331, 338 (Bankr. E.D. Tenn. 2003). The Court can take judicial notice of the fact that a sale of the estate's undivided one-half interest in the property would realize substantially less than a sale of the entire property free of the co-owner's interest. Mostoller, 204 B.R. at 338.
>
> The undisputed facts also show that the estate would realize a substantial benefit from the sale. Currently, the estate is administratively insolvent and has no cash. The Brick Church Property is by far the estate's largest asset, and it is not encumbered by a purchase-money lien. The Debtor believes that the property is worth at least $650,000. It is clear that selling the Brick Church Property provides the best opportunity for unsecured creditors to receive a dividend in this case. The probability of a substantial benefit to the estate outweighs any potential detriment to the co-owner, Marla Bell.
>
> Finally, it is undisputed that the Brick Church Property is used as a residence, and not in the production, transmission, or distribution for sale of electricity or gas. The undisputed facts establish every element of Section 363(h). The Trustee is vested with the power to sell the entire Brick Church Property, free and clear of the interest of the co-owner, Marla Bell.

(Id. at 54-55.) Thus, the Bankruptcy Court ordered that: (1) the transfers at issue be avoided; (2) title to the Brick Church Property vest in Owen and Marla Bell, as tenants in common; (3) the Trustee could recover the Brick Church Property, or its value; (4) the Trustee was vested with the power to sell the Brick Church Property, free and clear of Marla Bell's co-ownership interest; and (5) the value of the Brick Church Property was preserved for the benefit of the estate. (Id. at 55.)

Owen Bell, Marla Bell, and the Family Partnership then filed a notice of appeal, opting to have this Court, rather than a Bankruptcy Appellate Panel, hear the appeal. (Id. at 75-76.)

## II. Standard of Review

"The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a). On appeal,

the district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. MBNA America Bank, N.A. v. Meoli (In re Wells), 561 F.3d 633, 634 (6th Cir. 2009); In re Rembert, 141 F.3d 277, 280 (6th Cir. 1998); see also Matter of New Ctr. Hosp., 187 B.R. 560, 566 (E.D. Mich. 1995) ("The standard of review for a bankruptcy court's grant of summary judgment is *de novo*.").

### III. Issue on Appeal

Debtors-Appellants' sole issue on appeal is whether there was a genuine issue of material fact regarding the Trustee's authority to sell the Brick Church Property pursuant to § 363(h). (Doc. No. 13 at 7.) Debtors-Appellants do not challenge the Bankruptcy Court's determinations that the transfers at issue were actually and constructively fraudulent. (Id.) Rather, they argue that the Trustee failed in his motion for summary judgment to establish the requirements of § 363(h). (Id.) Without any citation to authority, they argue that (1) the Brick Church Property is approximately 58 acres, and, therefore, it can be partitioned in kind; and (2) there is substantial detriment to co-owner Marla Bell because she resides on the property. (Id.) The Debtors-Appellants also contend that the Bankruptcy Court "should have required the Trustee to prove that the property could not have been partitioned in kind rather than rely on *res judicata*." (Id. at 8.) Accordingly, they request that the Court reverse the Bankruptcy Court and remand for further proceedings. (Id.)

### IV. Analysis

Section 363(h) provides that a co-owner's interest in property in which the bankruptcy estate owns an interest may be sold only if:

>  (1) partition in kind is impracticable;
>
>  (2) sale of the bankruptcy estate's undivided interest would realize significantly less for the estate than a sale free of the co-owner's interest;
>
>  (3) the benefit to the estate of such a sale outweighs the detriment, if any, to the co-owner; and
>
>  (4) the property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). The Trustee must prove all four elements of § 363(h) before his proposed sale can be authorized. Matter of Ray, 73 B.R. 544, 548 (Bankr. M.D. Ga. 1987). As noted, Debtors-Appellants' brief only raises arguments regarding § 363(h)(1) and (3). (Doc. No. 13 at 7-8.)

Section 363(h)(1) requires the plaintiff to establish that partition in kind of the property among the estate and defendant is impracticable. Bell, 80 B.R. at 107; In Re Vassilowitch, 72 B.R. 803, 807 (Bankr. D. Mass. 1987). "Where property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds." In Re Addario, 53 B.R. 335, 338 (Bankr. D. Mass. 1985); see also In re Griffin, 123 B.R. 933, 935 (Bankr. S.D. Fla. 1991) (same). Here, the undisputed facts showed that the Brick Church Property constituted Owen and Marla Bell's residence and was a single family residence. (Doc. No. 9-1 at 70.) Therefore, partition was impracticable, and the Bankruptcy Court properly found that there was no genuine issue of material fact on this element.

With respect to whether the benefit to the estate of the sale outweighed the detriment to Marla Bell, the undisputed facts established that the estate would realize a substantial benefit from the sale. The Brick Church Property was the largest asset of the estate, unencumbered by a purchase-money lien, and worth approximately $650,000. (See Doc. No. 9-6 at 79.) Sale of the Brick Church Property would result in a dividend payment to unsecured creditors. (Id.) When the

8

sale of property with substantial equity "would result in the payment of some dividend to unsecured creditors . . . [it] undoubtedly would constitute a benefit to the estate, especially when the property is the sole asset of the bankruptcy estate." Kelley, 304 B.R. at 339; see also Vassilowitch, 72 B.R. 803 at 807 (holding that the benefit to the estate, a 100 percent dividend to creditors, outweighed detriment to Debtor and her children, who would be forced to move after the sale of the property). Once the Trustee established that the sale of the Brick Church Property would generate a benefit to estate in the form of a dividend to unsecured creditors, the burden shifted to the co-owner, Marla Bell, to prove that she would suffer a detriment outweighing the benefit. See Gazes v. Roswick (In re Roswick), 231 B.R. 843, 847 (Bankr. S.D.N.Y. 1999) ("The Plaintiff bears the burden of showing that the estate will benefit from the sale of the property, and once that burden is met, it shifts to the [co-owner] to prove that [she] will suffer a detriment outweighing the benefit to the estate.").

Before the Bankruptcy Court, Debtors-Appellants contended that there was substantial detriment to the Marla Bell that weighed against a sale, namely, that she lived and resided on the property and would be forced to relocate if the property was sold. (Doc. No. 9-8 at 10.) In weighing the benefit to the estate versus the detriment to Marla Bell, the Bankruptcy Court concluded that selling the Brick Church Property provided the best opportunity for unsecured creditors to receive a dividend, and the probability of the substantial benefit outweighed any potential detriment to Marla Bell. (Doc. No. 9-8 at 54.)

The Court agrees with the Bankruptcy Court's finding. Although Marla Bell clearly identified that the sale would be detrimental to her, she did not set forth any specific argument regarding how this detriment outweighed the benefit to the estate. Moreover, under 11 U.S.C. § 363(j), she was afforded a statutory right of first refusal, wherein she could purchase the Brick

9

Church Property at the Trustee's sale. See 11 U.S.C. § 363(i) ("Before consummation of a sale of property to which subsection (h) of this section applies . . . a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.") Further, if the Brick Church Property was sold to a third-party, she was entitled to half the proceeds from the sale. See 11 U.S.C. § 363(j). Accordingly, when considering the substantial benefit to the estate and the lack of any argument from Debtor-Appellants as to how the detriment to Marla Bell outweighed this benefit, the Bankruptcy Court correctly determined that the benefit to the estate outweighed the detriment to Marla Bell. Therefore, the Bankruptcy Court properly granted the Trustee summary judgment, as (1) the Trustee established undisputed facts demonstrating that the § 363(h)(1) and (3) elements were satisfied; and (2) Debtors-Appellants did not dispute that the § 363(h)(2) and (4) elements were met.

Further, the Bankruptcy Court correctly identified that Debtors-Appellants' arguments were barred by *res judicata*. A claim is barred by *res judicata* if (1) there was a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action develops between the same parties or their privies; (3) an issue in the subsequent action was litigated or should have been litigated in the prior action; and (4) there is an identity of the causes of action. Browning v. Levy, 283 F.3d 761, 771 (6th Cir. 2002). The Bankruptcy Court accurately noted that whether the Brick Church Property could be sold free of a co-owner's interest was an issue that was litigated by the Bankruptcy Court during Owen and Marla Bell's 1984 Chapter 7 bankruptcy proceeding. See Bell, 80 B.R. at 105. Therefore, the first and third *res judicata* elements were met. Browning, 283 F.3d at 771. Further, Trustee Behm was in privity with Trustee McLemore, and Owen and Marla Bell were in privity with Marla Bell and Christopher Bell. (Doc. No. 9-8 at 72.) Finally, both cases were Chapter 7 bankruptcy proceedings, so there was an identity of cause

10

of action. See Browning, 283 F.3d at 771. Accordingly, the Bankruptcy Court correctly applied *res judicata* to bar Debtors-Appellants' claim that the Brick Church Property was not subject to sale under § 363(h).

In their brief before this Court, Debtors-Appellants do not dispute the Bankruptcy Court's *res judicata* analysis, but, rather, argue that "[t]hirty years is a long time, and much has changed in the Nashville landscape." (Doc. No. 13 at 8.) They contend that the Bankruptcy Court should have required the Trustee to prove that the property could not have been partitioned in kind, rather than rely on *res judicata*. (Id.)

First, as noted above, the Bankruptcy Court did not solely rely on *res judicata* in finding that the § 363(h) factors were met. The Trustee included a thorough argument regarding his authority to sell the Brick Church Property, pursuant to § 363(h), in his summary judgment reply, and the Bankruptcy Court analyzed this argument and concluded that the undisputed facts showed that the § 363(h) factors were met. (See Doc. No. 9-8 at 12-19, 54-55.) Debtors-Appellants' argument to the contrary is belied by the record. Further, Debtors-Appellants argument that *res judicata* is inapplicable because of the 30-year timespan between the Chapter 7 bankruptcy proceedings is not supported by any citation to legal authority. In any event, while Nashville today is vastly different than Nashville 30 years ago, Plaintiffs' argument is not well taken, as *res judicata* implicitly contemplates a time gap between the initial and subsequent action. Imposing a time limitation or expiration date on the doctrine would render it a nullity.

In sum, this Court has reviewed the underlying record in its entirety and finds no error in the Bankruptcy Court's findings of fact or conclusions of law. Debtors-Appellants' arguments do not demonstrate that there was genuine issue of material fact preventing the Bankruptcy Court from granting the Trustee summary judgment.

## V. Conclusion

For the reasons set forth herein, the Bankruptcy Court's Order Granting Trustee's Motion for Summary Judgment will be affirmed and this case dismissed.

An appropriate Order will enter.

                                                                   WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE